411 So.2d 1116 (1982)
April HILLIARD
v.
LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY, d/b/a Louisiana Blue Cross.
No. 12269.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1982.
Rehearing Denied April 16, 1982.
*1117 Reynolds, Nelson & Theriot, Charles W. Nelson, Jr., New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Matthew A. Wellman, New Orleans, for defendant-appellee.
Before BOUTALL, CHEHARDY and KLIEBERT, JJ.
CHEHARDY, Judge.
Plaintiff, April Hilliard, appeals a district court decision in favor of defendant, Louisiana Health Service and Indemnity Company, doing business as Louisiana Blue Cross, and against the plaintiff, dismissing her suit at her costs.
This matter was heard in the trial court after being submitted on the following stipulations filed into the record:
"I.
At all times material and pertinent to the controversy before the Court, plaintiff, April Hilliard (Hilliard), was employed by the Jefferson Parish School Board.
"II.
Sometime in November 1977, Hilliard received in the mail a description of the group medical plan of defendant, Louisiana Health Service and Indemnity Company, d/b/a Louisiana Blue Cross (Blue Cross), for the employees of the Jefferson Parish School Board, together with an application for coverage pursuant to that plan. * * *
"III.
Hilliard executed the application and mailed it to Blue Cross on or about November 17, 1977. Subsequently, Blue Cross informed Hilliard that it had lost a portion of Hilliard's application, and requested her to reapply and send the first month's premium in the amount of $26.55 for the month of December, 1977, which Hilliard did.

*1118 "IV.
Blue Cross sent notice to Hilliard informing her that the effective date of the policy was December 1, 1977.
"V.
Blue Cross is Hilliard's insurer through its group medical insurance contract written for the Jefferson Parish School Board, Contract No. XXXXXXXXX, Group No. 59078.
"VI.
In December, 1977, plaintiff received a two page brochure entitled `Blue Cross Maximum Hospital Expense Plan Type M-25, 40-40, Jefferson Parish School Board PersonnelGroup No. 2303,' * * *. This brochure lists no exclusions from policy coverage.
"VII.
In January, 1978, Hilliard contracted influenza which resulted in tonsillitis. Plaintiff's tonsillitis reappeared in February, 1978 at which time her doctor advised that she have her tonsils removed. Hilliard had experienced and had been aware of medical problems in connection with her tonsils since approximately 1972.
"VIII.
If called to the stand, Hilliard would testify that in March of 1978, Hilliard called Blue Cross' New Orleans office to determine whether the Blue Cross policy at issue would cover a proposed tonsillectomy. She gave the person answering the telephone her name and policy number and requested that they inform her of whether or not the Blue Cross policy would cover the tonsillectomy. Hilliard did not inform the Blue Cross employee of the effective date of the policy, nor was she asked. Hilliard did not inform the Blue Cross employee that she had a history of colds and probably tonsillitis, nor was she asked. After a brief pause, defendant's representative returned to the telephone and informed Hilliard that a tonsillectomy would be covered by the policy. Defendant, Blue Cross, objects to the admissibility of this testimony on grounds that it is in violation of the parol evidence rule.
"XII. [sic]
Hilliard did not inform the Blue Cross employee referred to in Paragraph XI, above, that her tonsillitis constituted a pre-existing condition, because Hilliard did not know that her tonsillitis constituted a pre-existing condition and that pre-existing conditions are excluded from coverage under the policy for 180 days after the effective date of the policy. Defendant, Blue Cross, objects to the admissibility of this testimony on grounds that it is in violation of the parol evidence rule.
"XIII.
Blue Cross employees are not authorized by Blue Cross to enlarge individual coverage of Blue Cross policies issued by Blue Cross pursuant to group plans, although Hilliard was not aware of that at the time of her conversations.
"XIV.
On or about March 20, 1978, Hilliard underwent a tonsillectomy.
"XV.
The specialist which Hilliard consulted in connection with and who performed the tonsillectomy was Norma L. Kearby, who together with Hilliard's general practitioner, Edmond Mickal, submitted proof of claim forms to Blue Cross, and, subsequently, on Blue Cross' request submitted a discharge summary form and patient history form pertaining to Hilliard; the discharge summary form, annexed hereto as Exhibit No. 4 provides, in pertinent part:
`25 year old female who has history of recurrent tonsillitis was admitted for surgery as described above....'
*1119 [T]he patient history form, annexed hereto as Exhibit No. 5 provides, in pertinent part:
`Tonsillitis every month or two in past year.'
"XVI.
On or about April 10, 1978, Hilliard received a copy of the booklet entitled `A Group Plan Designated for Jefferson Parish School Board by Blue Cross of Louisiana,' a copy of which is attached hereto as Exhibit No. 2. This booklet (Exhibit 2) on page 2 under the heading entitled `Waiting Periods' provides a waiting period for coverage of 180 days on pre-existing conditions. On page 16 of this booklet (Exhibit No. 2) under the heading entitled `Major Medical Exclusions and Limitations', it incorporates the exclusions and limitations of the basic contract between the Jefferson Parish School Board and Blue Cross.
"XVII.
Hilliard has never seen a copy of the basic contract, a copy of which is attached hereto as Exhibit No. 3. Article XII of the basic contract, (Exhibit No. 3) entitled `Exclusions and Limitations', Section A(8), excludes from coverage any pre-existing condition until an individual subscriber has been a member for 2 years.
"XVIII.
Blue Cross denied plaintiff's claims as having been incurred within 180 days of the effective date of the policy to remedy a pre-existing condition; this denial took place on or about May 11, 1978.
"XIX.
Plaintiff incurred medical expenses of $821 in connection with her tonsillectomy including $300 paid to the Brown McHardy Clinic and $521 paid to East Jefferson Hospital.
"XX.
Hilliard was charged $80 for a semi-private room for one night at East Jefferson Hospital; the schedule of payment set out in Exhibit No. 1, Exhibit No. 2 `hospital benefits' at page 2 and Exhibit No. 3, group amendment, effective January 1, 1975, provides no more than $40 per day.
"XXI.
The policy issued by Blue Cross and subject to the instant controversy does not cover and provide insurance against bodily injury, disablement, or death by accident. The policy only provided benefits for hospital and medical care."
In his written reasons for judgment the district court judge stated:
"This Court has concluded that Hilliard voluntarily entered into a contractual agreement with Louisiana Health Service and Indemnity Company d/b/a Louisiana Blue Cross (hereinafter referred to as `Blue Cross') at a time in which she was suffering from a preexisting tonsil condition dating back to 1972. A review of the documents attached to the stipulations reveals that the treatment of the said preexisting condition would not be covered under the insurance policy designed for the Jefferson Parish School Board for the first one hundred eighty (180) days of coverage (Exhibit 2, p. 2).
"The law is clear that the parol evidence rule does not prevent proof of a subsequent verbal agreement modifying a prior written agreement if the agreement by law must not be reduced to writing. Torrey v. Simon-Torrey, Inc., 284 So.2d 130 (La.App. 3 Cir. 1973); LSA-C.C. Art. 2276. Modification of insurance contracts are not valid unless reduced to writing and made a part of the policy. LSA-R.S. 22:628. Therefore, this Court concludes that any verbal agreement, if any, extending coverage to Hilliard's pre-existing tonsillitis condition, without being reduced to writing, must be excluded from evidence. Furthermore, this Court concludes that, in light of R.S. 22:1161 and R.S. 22:1175, no misrepresentation *1120 of coverage was made by the Blue Cross employee because the said employee had no authority to act as an agent for Blue Cross.
"The Court concludes then that the petition of Hilliard lacks merit and should be dismissed at her cost."
This court agrees with the defendant that oral statements cannot be used to alter the terms of a written insurance policy. LSA-R.S. 22:628 and Rolling v. Miller, 233 So.2d 723 (La.App. 4th Cir. 1970). However, the plaintiff also argues that she has sustained damages resulting from negligent misrepresentation based on the insurer's failure through its employee, to adequately describe to her, as its insured, the coverage offered by its policy. In discussing negligent misrepresentation, the court said in Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979), that LSA-C.C. arts. 2315 and 2316 afford a broad ambit of protection for persons damaged by intentional and negligent acts of others, sufficient to encompass a course of action for negligent misrepresentation. The court also explained that for a plaintiff to prevail under that theory the law requires the existence of a legal duty on the part of the defendant to supply correct information and there must also be inquiry as to whether there was an affirmative duty to insure that the information given was correct.
In the present case, at the time of making the phone call to the defendant's employee, the plaintiff had never been given any written documents showing exclusions and accordingly did not know of any exclusions contained in her policy nor had she been apprised of any waiting period for pre-existing conditions. In view of this, the defendant certainly had the obligation through its employee to inquire into these aspects of plaintiff's condition before informing her, without reservation, that the subject policy would cover her tonsillectomy. The employee in question, moreover, must be considered a servant of the defendant, defined as such "when, in the eyes of the community, he would be regarded as a part of the employer's own working staff * * *." Prosser, Law of Torts, Chap. 12, § 70, p. 460 (1971). Also, once it is determined that a man at work is a servant, the master becomes subject to vicarious liability for the employee's torts, Law of Torts, supra.
Although the district court judge cites LSA-R.S. 22:1161 and LSA-R.S. 22:1175 in denying the plaintiff recovery under the theory of negligent misrepresentation, a review of these statutes reveals that the former simply defines an insurance agent and the latter prohibits persons from representing themselves as insurance agents in absence of conformance with applicable provisions in the law. This court holds, therefore, that the application of these statutes to the present case was erroneous due to the fact that the subject employee of the defendant was not acting in the capacity of an insurance agent but was simply dispensing information on behalf of her employer.
For the reasons assigned, therefore, the district court decision is reversed and it is hereby ordered that judgment is rendered in favor of the plaintiff and against the defendant in the amount of $781, together with interest from date of judicial demand until paid. The defendant is to pay all costs of the proceedings.
REVERSED AND RENDERED.