SHORTESS, Judge.
In this case, C. Frank Holthaus (plaintiff) appeals the trial court’s sustaining of Cameron Brown Company’s (defendant) exception of no cause of action. LSA-C.C.P. art. 927. As we must consider true the well-pleaded facts of plaintiff’s petition when evaluating this exception, we set out the pertinent parts thereof:
3.
In June of 1983, Cameron-Brown, acting through its agents and/or employees, *444 agreed to lend petitioner Fifty-two Thousand and no/100 ($52,000.00) at 12½ percent.
4.
Cameron-Brown said this agreement was “locked in”; viz, Cameron-Brown assured petitioner his interest rate would be 12½ percent.
5.
Cameron-Brown broke this agreement and refused to honor its word and promise. Cameron-Brown later advised petitioner that its employee’s [sic] had fouled up by forgetting to process the loan to lock in the interest rate, which foul up resulted in the dismissal of one employee and, ultimately the resignation of another, but which foul up resulted in hurting your petitioner because he was offered only a new, higher interest rate of 13% percent.
6.
By the time petitioner was made aware of Cameron-Brown’s sloppy business practice and breach of promise and agreement, petitioner was unable to locate alternate financing at 12½ percent.
7.
Cameron-Brown injured petitioner by breaking its promise and agreement with him and by causing him to rely, much to his detriment, on Cameron-Brown’s assurances that his loan rate was “locked in”.
This case raises the issue of whether plaintiff’s petition sets out a cause of action in tort.[1] The initial question is whether defendant had a duty of due care. Of course, defendant was under no duty to provide a loan at the 12V2% interest rate. But once it undertook to “lock in” that interest rate for plaintiff, it assumed a duty, owed to plaintiff, to use due care to do so. See W Prosser, Handbook of the Law of Torts, at 345 (4th ed. 1971)
The petition alleges that defendant failed to take the steps necessary to “lock in” the agreed-upon interest rate because of a “foul-up.” This “foul-up” was a breach of the duty that defendant assumed. Plaintiff was damaged because he justifiably relied on the assurance given by defendant.[2] When confronted with the fact that defendant could offer only the higher 13% % rate, plaintiff could not obtain elsewhere the lower rate he had been told was “locked in.” Plaintiff’s actions were governed by defendant’s assurance, but that reliance was based on the mistaken notion that defendant would comply with its statement.
Thus defendant breached its duty under the circumstances, and that breach resulted in damages caused by plaintiff's reasonable reliance on defendant’s assurance. The risk that resulted in the damages was encompassed within the scope of protection of the duty, for it was specifically to plaintiff that defendant extended the assurance, and it was reasonably foreseeable that plaintiff would rely on the strong, “locked in” language. See Sibley v. Gifford Hill and Company, Inc., 475 So.2d 315, 319 (La.1985).
Although we do not find that defendant’s actions are most precisely described as a negligent misrepresentation, analysis of that cause of action supports the position outlined above. Louisiana courts have ruled that LSA-C.C. arts. 2315 and 2316 are broad enough to include this action. Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979), Dohmann v. United Gas Pipe Line, 457 So.2d 307 (La.App.3rd Cir.1984). The gravamen of negligent misrepresentation is a defendant’s breach of a duty to obtain and supply accurate information; typically, reliance on the inaccurate infor *445 mation causes a plaintiffs injury. In other words, the effect is identical to that in this case; defendant’s negligent failure to lock in the interest rate rendered its statement untrue[3]: the rate was not locked in and plaintiff was thereby damaged.
Had the following series of events occurred, plaintiff would have a cause of action for negligent misrepresentation under Louisiana law: one of defendant’s employees begins to prepare the documents necessary to lock in the 12V2% rate; he tells another employee that the rate is assured but then, because of a “foul-up,” neglects to complete the paper work; the second employee then assures plaintiff that the rate is locked in when in fact it is not. We see no reason to deny this plaintiff a cause of action simply because the assurance preceded instead of followed the “foul-up.”
In reaching this decision, we recognize that LSA-C.C. art. 2924 provides that the amount of interest must be fixed in writing. Were this an action simply to enforce an oral contract stipulating a rate of interest, we would follow the dictates of that article. But plaintiff’s petition sets out facts that direct us to Articles 2315 and 2316 to determine whether the law affords any remedy. Johnson v. Edmonston, 383 So.2d 1277 (La.App.1st Cir.1980). As we must liberally construe the petition to grant a cause of action under any theory supported by its facts, Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La.1975), we conclude that plaintiff has pled a cause of action for damages under the “ ‘broad ambit of protection’ ” of Articles 2315 and 2316. Devore, 367 So.2d at 839. The duty defendant owed and breached is not a product of the contractual law of loan governed by Article 2924 but is rather a product of Articles 2315 and 2316, requiring a defendant who undertakes to lock in an interest rate (on which a plaintiff will rely) to do so with reasonable care.[4] The forgetfulness of defendant alleged by plaintiff falls below the standard of due care and supports the finding of a cause of action, notwithstanding any provision in the law of loan.[5]
The case of Hilliard v. Louisiana Health Service and Indemnity Company, 411 So.2d 1116 (La.App.4th Cir.1982), writ denied, 416 So.2d 114 (La.1982), is instructive in this regard. There, the plaintiff argued “that she has sustained damages resulting from negligent misrepresentation based on the insurer’s failure through its employee, to adequately describe to her, as its insured, the coverage offered by its policy.” Hilliard, 416 So.2d at 1120. The defendant insurer had never given plaintiff the relevant provisions of her policy, and the defendant’s employee had mistakenly told her that her condition was covered under the policy. The defendant in Hilli-ard cited legislation requiring that any agreement in conflict with, modifying, or extending coverage of any insurance contract be in writing to be valid. LSA-R.S. 22:628. The Hilliard court agreed with that statement of the law but nonetheless awarded damages for negligent misrepresentation.
In both this case and Hilliard, enforceability of the agreement depended upon a writing. In both there was no writing. In Hilliard, the court recognized that plaintiff had a cause of action in tort based on defendant’s duty as established by Articles 2315 and 2316, despite the Legislature’s *446 requirement of a contractual writing: “the defendant certainly had the obligation through its employee to inquire into these aspects of plaintiffs condition before informing her, without reservation, that the subject policy would cover her [condition].” In this case, Cameron Brown likewise had the obligation to use due care to make sure that the interest rate was locked in as its employee had informed plaintiff it was.[6]
Defendant argues that the “petition asserts no claim in tort, and actually amounts to an argument that Cameron Brown was obligated to provide a loan with 12.5% interest before Holthaus was obligated to pay it.” The petition does not allege that defendant was obligated to provide the loan or that plaintiff was obligated to enter into it. The most reasonable interpretation of the petition is that both parties orally agreed to an interest rate of 12½% if both should agree to consummate the loan. The inequality defendant urges is not supported by the petition. However, but for the alleged negligence of defendant, the interest rate on a finalized loan would have been 12⅛%. Plaintiffs petition asserts damage because he could find no other source of 12½% interest and was required to obtain financing at a higher rate.
For the foregoing reasons, the judgment of the trial court is reversed and the case remanded.
REVERSED AND REMANDED.

. Plaintiff has sued for damages; he has not asked that the court compel defendant to loan plaintiff $52,000.00 at the 12½% interest rate.

. "A promise, which carries an implied representation that there is a present intention to carry it out, is recognized everywhere as a proper basis for reliance." Prosser at 728.

. Defendant’s statement, which had the effect of a misrepresentation, was made in the normal course of its business as a mortgage company. In this context, Dean Prosser’s comment is persuasive: "where the representation, although itself gratuitous, is made in the course of the defendant's business or professional relations, the duty is usually found.” Prosser, p. 706, § 107.

. See e.g., DeBattista v. Argonaut-Southwest Insurance Company, 403 So.2d 26, 32 (La.1981) (finding tort liability despite seeming impediments of obligations law).

.It is reasonable to assume that the process of locking in the rate would require that it be "fixed in writing." LSA-C.C. art. 2924. Thus, defendant’s negligent act has resulted in the unenforceability of the interest rate under Article 2924. Yet it argues that even though its act has denied plaintiff recovery in contract, he should also be denied a cause of action in tort.

. We note that Cameron Brown’s breach of this duty transformed the representation of an intention into a misrepresentation.